# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | CHAPTER 11 |
| Eclipse Aviation Corp., | |
| Debtor. | Case No. 08-13031 (MFW) |
| | |
| LA SCOGLIERA, S.p. A., an Italian Corporation, | Adv. Pro. No. 09-50028 (MFW) |
| Plaintiff, | |
| v. | |
| ECLIPSE AVIATION CORP., | |
| Defendant. | |

## AMENDED COMPLAINT FOR IMPOSITION OF CONSTRUCTIVE TRUST, DECLARATORY RELIEF, REPLEVIN, SPECIFIC PERFORMANCE AND EQUITABLE LIEN

Unsecured Creditor, LA SCOGLIERA, S.p.A. ("La Scogliera"), an Italian corporation, files this Complaint pursuant to Fed. R. Bank. P. 7001 for imposition of constructive trust, declaratory relief, replevin, specific performance and equitable lien and alleges as follows:

### I. JURISDICTION AND VENUE

1. This is an adversary proceeding commenced pursuant to Fed. R. Bank. Pro. 7001, *et seq.*

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

3. Venue in this District is proper under 28 U.S.C. §1408 and §1409(a).

4. This is a core proceeding under 28 U.S.C. § 157 (b)(2).

## II COMMON ALLEGATIONS

5. La Scogliera is an Italian corporation organized under the laws of Italy with its principal place of business in Venice, Italy.

6. In November of 2007, the principal of la Scogliera, Sebastiano Furstenberg, interested in obtaining an economical aircraft for the use of his company, made inquiries to Eclipse Aviation Corporation ("EAC") through the Eclipse website to obtain information regarding the Eclipse 500 Very Light Jet. Mr. Furstenberg soon received an email communication from an Eclipse representative Ronald Smith, which indicated that if Mr. Furstenberg executed a purchase agreement and placed a deposit of $840,000 U.S. by December 14, 2007, he would receive a reduced price on the aircraft. A true and correct copy of this communication is attached hereto as Exhibit A.

7. On December 13, 2007, Mr. Furstenberg, on behalf of La Scogliera S.p.A, executed a Purchase Agreement (the "Agreement") for the purchase of an Eclipse 500 with a purchase price of one million, four hundred thousand dollars ($1,400,000.00). A true and correct copy of the Agreement is attached hereto as Exhibit B.

8. Pursuant to the terms of the Agreement, La Scogliera was required to place a deposit of $840,000.00 in order to receive the reduced price of the aircraft. These funds were to be placed into an escrow account. The escrow account was managed by an

escrow agent, Insured Aircraft Title Service Inc. ("IATS"). A true and correct copy of the Escrow Agreement is attached hereto as <u>Exhibit C.</u>

9. On December, 13, 2007, La Scogliera wired funds to the IATS account specified in the Escrow Agreement in the amount of $840,000.00 as a deposit for the Eclipse 500. The delivery date of the aircraft was indicated as being for the first quarter of 2010.

10. Within five weeks of the wire transfer, IATS made three disbursements to EAC out of La Scogliera's sub-account to cover "payroll and payments to suppliers." These disbursements, totaling $843,000.00, depleted La Scogliera's funds held in escrow.

The disbursements were made as follows:

    i) January 4, 2008: 1st Disbursement $260,000

    ii) January 25, 2008: 2nd Disbursement $312,000

    iii) February 7, 2008: 3rd Disbursement $271,000

11. According to section 3 (a) of the Escrow Agreement, each customer was required to execute a Joinder Agreement in order to place funds with IATS. A copy of the Joinder Agreement is attached as <u>Exhibit D</u>.

12. EAC maintained control of the escrow account. As specified in Section 3(b) of the Escrow Agreement, EAC was to direct IATS as to the amount of each disbursement from each customer's sub-account. EAC determined the last two disbursements from La Scogliera's sub-account as if the total deposit ($840,000.00) was still held in the account. Thus, EAC's method of calculating the subsequent disbursements was fundamentally flawed because it failed to subtract the amount of

previous disbursement. This allowed EAC to cause to be disbursed from La Scogliera's sub-account more funds than were authorized under the Escrow Agreement.

13. According to Section 3(e) of the Escrow Agreement, EAC acknowledged that it had no interest in or rights to the funds in a customer's sub-account unless it has duly delivered a Disbursement Notice or a Customer Aircraft Disbursement Notice to the Escrow Agent in accordance with the terms of the Escrow Agreement.

14. La Scogliera has received no notice of any of the disbursements which had been made and has not received any documentation indicating that EAC duly delivered a Disbursement Notice or Customer Aircraft Disbursement Notice, as required, in order to entitle it to the funds in La Scogliera's sub-account.

15. La Scogliera did not learn until after the filing of the bankruptcy petition that the entirety of the escrow funds had been depleted.

16. EAC made significant representations to the principal of La Scogliera to induce him to place a deposit of $840,000.00 prior to December 14, 2008, in order to obtain a price reduction.

17. At the time that EAC's representatives were presenting such inducement to La Scogliera's principal, EAC knew or should have known that it was unlikely that the Eclipse 500 be delivered for the contract price.

18. In June of 2008, EAC increased the purchase price of the aircraft.

19. In accordance with the terms of the Purchase Agreement, the increase of the sales price was an event entitling customers who had placed a deposit to request a refund of the deposit (a "Refundable Event").

20. La Scogliera received no notice of the increase of the price and thus was unable to avail itself of the refund to which it would have been entitled. As a result of not being able to obtain its refund prior to the bankruptcy filing, La Scogliera lost the opportunity to obtain a refund of its deposit.

## COUNT I
## IMPOSITION OF A CONSTRUCTIVE TRUST
## (BASED UPON UNJUST ENRICHMENT AND FAILURE OF EAC TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE)

21. The allegations set forth in paragraphs 1 through 20 are re-alleged herein as if fully set forth.

22. A fiduciary relationship existed between La Scogliera and EAC because La Scogliera's principal placed special confidence in EAC. EAC, in equity and good conscience, is bound to act in good faith and with due regard to its interests.[1]

23. EAC maintained direct control over La Scogliera's funds which had been placed into the escrow account, at EAC s direction. At all times, EAC maintained control over the funds in the escrow account.

24. EAC made or implied a promise that La Scogliera would receive an aircraft for the funds it placed on deposit and that in the event that EAC was unable to provide the aircraft, La Scogliera would receive a refund of its money.

25. La Scogliera reasonably relied upon that promise and transferred $840,000.00 to the escrow account as directed by EAC.

26. EAC availed itself of La Scogliera's funds and as such, was unjustly enriched.

---

[1] *See, e.g.,* Azar v. Prudential Ins. Co. of Am., 68 P. $3^d$ 909, 926 (N.M.App. 2003).

27. EAC has failed to provide the aircraft or to provide adequate assurance that it will provide the aircraft in the future or that it will return La Scogliera's deposit.

**WHEREFORE**, La Scogliera respectfully requests that this Court enter an order imposing a constructive trust on assets of the Debtor in an amount equal to the deposit placed by La Scogliera, $840,000.00, plus attorney fees and costs and other relief as this Court deems just.

## COUNT II
## IMPOSITION OF CONSTRUCTIVE TRUST
### (BASED UPON FALSE REPRESENTATIONS AND IMPROPER WITHDRAWAL OF ESCROW FUNDS)

28. The allegations set forth in paragraphs 1 through 20 are re-alleged as if fully set forth.

29. As alleged above, EAC required La Scogliera to execute the Escrow Agreement and to wire funds in the amount of $840,000.00 to the escrow account it had established for deposit funds.

30. During the time in which EAC, through its agents, was soliciting the purchase from La Scogliera's principal, EAC, its officers and agents, knew or should have known that the financial condition of EAC was unsatisfactory. EAC had, merely two months prior to La Scogliera's execution of the purchase contract, experienced a staff reduction of approximately ten percent of its workforce. The majority of these workers served in positions necessary to begin production.[2] In addition to the elimination of beginning-production staff, EAC was heavily indebted to creditors.

---

[2] See *AVweb* article dated October 19, 2007, attached hereto as <u>Exhibit E</u>.

31.     Despite having knowledge that it would not be likely to deliver the aircraft, EAC nonetheless actively solicited La Scogliera's principal to place the deposit into the escrow account.

32.     In addition to actively soliciting deposits despite of its knowledge as to its financial instability, EAC wrongfully obtained funds from the Escrow Account.

33.     Section 3(a) of the Escrow Agreement provides, in relevant part, that there was to be funds in the aggregate amount of $30,000,000.00 prior to EAC delivering a Disbursement Notice to the Escrow Agent with copies to the Customers.

34.     Upon information and belief, EAC delivered Disbursement Notice to the Escrow Agent prior to the aggregate amount being deposited in the Escrow Account.

35.     Section 3(a) of the Escrow Agreement further provides that EAC was to certify on the Disbursement Notice that no Termination Event had occurred. A Termination Event is defined within that section to include, among other events, insolvency or "the acceleration of any indebtedness of Eclipse for borrowed money evidenced by notes, bonds, or similar instruments and having a principal amount of at least $25,000,000."

36.     Upon information and belief, at the time that the disbursement of funds from La Scogliera's customer sub-account was made by the Escrow Agent, the financial condition of EAC was such that it was insolvent. In addition, upon information and belief, EAC had received notice of acceleration by a creditor to whom it owed more than $25,000,000.

37.     Upon information and belief, at the time that the disbursement of funds from La Scogliera's sub-account was made, EAC had failed to indicate that a

Termination Event had occurred, resulting in the wrongful distribution of funds from La Scogliera's customer sub-account.

38. Section 3(e) of the Escrow Agreement provides that "EAC acknowledges that it shall have no rights in the Escrow Account or any Customer's sub-account or any funds until EAC has duly delivered a Disbursement Notice or a Customer Aircraft Disbursement Notice" EAC failed to deliver to La Scogliera a Distribution Notice, with the result that La Scogliera had no opportunity to make inquiry as to the propriety of the distribution of funds from its customer sub-account.

39. By delivering to the Escrow Agent a Disbursement Notice that failed to disclose the occurrence of a Termination Event (insolvency or the receipt of an acceleration notice) EAC failed to 'duly deliver' a Disbursement Notice.

40. As a result of its failure to "duly deliver" a Disbursement Notice, EAC had no rights to the deposit funds in La Scogliera's customer sub-account with the Escrow Agent.

41. EAC, as result of having obtained funds over which it had no rights and which rightfully belonged to La Scogliera, was unjustly enriched.

42. Due to the unjust enrichment of EAC, La Scogliera is entitled to the imposition of a constructive trust on assets of EAC in the amount of its deposit.

**WHEREFORE,** La Scogliera respectfully requests that this Court enter an order imposing a constructive trust on assets of the Debtor in an amount equal to the deposit placed by La Scogliera, $840,000.00, plus attorney fees and costs and other relief as this Court deems just.

# COUNT III
# DECLARATORY RELIEF

43. The allegations set forth in paragraphs 1 through 20 are re-alleged as if fully set forth herein.

44. This is a claim for declaratory relief pursuant to Fed.R.Bank. Pro. 7001(9) and Fed.R. Civ.Pro. 57 to determine that the deposit placed by La Scogliera is not an asset of the estate.

45. La Scogliera, as a customer of EAC who reasonably relied upon EAC's representations and placed with it a deposit of $840,000 for the purchase of an aircraft.

46. EAC was not entitled to La Scogliera's deposit funds because those funds are held in a constructive trust and as such are excluded from a bankruptcy estate.[3]

47. EAC is further not entitled to La Scogliera's deposit funds because EAC failed to comply with the requirements of the Purchase Agreement in that it failed to provide notice of disbursements to La Scogliera, withdrew more from the escrow account than it was entitled to and failed to provide Disbursement Notice or a Customer Aircraft Disbursement as required under the Escrow Agreement.

48. EAC is further not entitled to La Scogliera's deposit funds because EAC failed to 'duly deliver' a Disbursement Notice in that it failed to disclose that a termination event (insolvency or the receipt of an acceleration notice by a creditor) had occurred and therefore EAC had no actual rights to the funds in La Scogliera's customer sub-account.

---

[3] McMakin v Pine Bush Equip. Co., Inc. 242 B.R. 271(D.N.J. 1999).

WHEREFORE, La Scogliera respectfully requests that this Court enter an order declaring that its deposit funds of $840,000.00 are not part of the estate and other such relief as this Court deems just.

## COUNT IV
## REPLEVIN

49. The allegations of paragraphs 1 through 20 are re-alleged as if fully set forth herein.

50. This is an action for replevin of property in the possession of EAC.

51. EAC has current possession of property rightfully belonging to La Scogliera in the amount of its deposit or, in the even that the Eclipse 500 jet has been wholly or substantially built, in the form of the aircraft.

52. La Scogliera has made demand for the return of the deposit funds or the possession of the aircraft, in the event that it has been completed, but such property has not been returned.

WHEREFORE, La Scogliera respectfully requests that this Court enter an order directing EAC to return to it the deposit funds in the amount of $840,000 or, provide La Scogliera with the aircraft in the event that the aircraft has been completed or substantially completed, and grant other relief this Court deems proper.

## COUNT V
## SPECIFIC PERFORMANCE

53. The allegations set forth in paragraphs 1 through 20 are re-alleged as if fully set forth herein.

54. On or about December 7, 2007, La Scogliera executed an agreement for the purchase of an Eclipse 500. EAC is obligated, pursuant to that agreement, to

manufacture and deliver the aircraft to La Scogliera. A copy of this agreement has been previously attached.

55. In furtherance of this agreement, La Scogliera wired a deposit of $840,000 USD to the account specified by EAC, which funds have subsequently been disbursed in full to EAC.

56. La Scogliera has fully performed under the purchase agreement.

57. The Eclipse 500 is unique property within the meaning of Section 2-716 of the Uniform Commercial Code.

58. In accordance with La Scogliera's rights under the purchase agreement and under applicable non-bankruptcy law, La Scogliera is entitled to an order directing the specific performance of the purchase agreement.

**WHEREFORE**, La Scogliera, S.p.A. respectfully requests that this Court enter an order directing EAC to fully perform its contractual obligations as set forth in the purchase agreement and for any other relief this Court deems proper.

## COUNT VI
## EQUITABLE LIEN

59. The allegations set forth in paragraphs 1 through 20 are re-alleged as if fully set forth herein.

60. La Scogliera, based upon representations made by officers or agents of EAC, executed a purchase agreement under which EAC had the duty to build and deliver an Eclipse 500 jet.

61. La Scogliera, at the direction of EAC, was induced to place and did place with an escrow agent, $840,000 as a deposit for the Eclipse 500 jet. All funds placed by La Scogliera have been disbursed to EAC as of March, 2008.

62. EAC has failed to perform under the contract and has failed to return to La Scogliera its deposit.

63. EAC is in possession of the funds deposited by La Scogliera or the plane that was built pursuant to the purchase agreement and as such has been unjustly enriched at the expense of La Scogliera.

**WHEREFORE,** La Scogliera respectfully requests that this Court enter an order finding that an equitable lien exists on the aircraft built pursuant to the purchase agreement or upon the funds in possession of EAC or for any other relief this Court deems proper.

Respectfully submitted,

By: _____
Michael G. Busenkell, Esq. (#3933)
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: 302.252.4324

MARIAN KENNADY, ESQ.
Florida Bar No. 379580
CONCEPCION SEXTON & MARTINEZ
Attorney for La Scogliera, S.p.A.
355 Alhambra Circle
Suite 1250
Coral Gables, FL 33134
Tel: 305-444-6669

12

WCSR 4125887v1